

# Missouri Court of Appeals
## Southern District

### In Division

JAMES WILLIAM GAMBLIN, )
)
    Petitioner-Appellant, )
)
v. ) No. SD37960
)
DIRECTOR OF REVENUE, ) **Filed: June 28, 2023**
)
    Respondent-Respondent. )

APPEAL FROM THE CIRCUIT COURT OF REYNOLDS COUNTY

Honorable Christina L. Kime

**<u>AFFIRMED</u>**

The Director of Revenue ("DOR") revoked James William Gamblin's ("Driver") driving privileges for one year for refusing to submit to a chemical test of his breath as required by section 577.041.[1] Driver appeals the circuit court's judgment ("the judgment") that sustained DOR's revocation.

In two points on appeal, Driver claims the revocation must be reversed because: 1) the arresting officer did not allow Driver twenty minutes to contact his attorney after the officer read Missouri's Implied Consent law ("Implied Consent") to Driver; and 2)

---

[1] Unless otherwise stated, all statutory citations are to RSMo 2016, including, as applicable, statutory changes effective January 1, 2017.

1

Driver was prejudiced by that alleged failure. Because Driver had already consulted with

his attorney and abandoned any further attempts to speak with one, we affirm.

## Standard of Review

> We review the trial court's judgment in a license revocation case as we do any other court-tried civil case. *Nix v. Dir. of Revenue*, 573 S.W.3d 156, 159 (Mo. App. W.D. 2019). "'[T]he trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.'" *Id.* (quoting *White v. Dir. of Revenue*, 321 S.W.3d 298, 307-08 (Mo. banc 2010)).

*Goforth v. Dir. of Revenue*, 593 S.W.3d 124, 126-27 (Mo. App. W.D. 2020). When the

facts of a case are contested, we defer to the trial court's determination of those facts.

*White*, 255 S.W.3d at 576.

## The Evidence

The parties agreed to submit the case upon the certified records of DOR, which

included Driver's Missouri Driver Record, Driver's signed Refusal to Submit to Alcohol

or Drug Test Notice of Revocation of Driving Privilege, and the Alcohol Influence

Report ("AIR") prepared by Corporal M.J. Chastain ("the officer").

The AIR, in pertinent part, provided the following evidence.[2] On June 24, 2022,

the officer observed a dark-gray Ram 1500 pickup make a right-hand turn without

signaling. The officer activated his lights and conducted a traffic stop. When the officer

began speaking with Driver, Driver responded, "I know I'm not in the wrong, but I just

---

[2] Driver mistakenly argues that the facts in this case were uncontested. Although the parties stipulated to the record, the evidence was contested as Driver stated in the stipulation that he "challenge[d] the probative value and sufficiency of [the AIR] to satisfy [DOR]'s burden[.]" In accordance with *White*, "unless the facts of the case are not contested in any way, this Court must give deference to the [circuit] court's determination[.]" 255 S.W.3d at 577 (quoting *Furne v. Dir. of Revenue*, 238 S.W.3d 177, 181 (Mo. App. W.D. 2007)).

2

um, sir we live right up the hill. We're good people. We are important members of the community."

Driver then told the officer that his wife (who was with him in the truck) was "calling Yarbro and Moore right now. I don't want to go through this." The officer's report states that Yarbro and Moore are "well[-]known defense attorneys who specialize in DWI defense."

Driver's wife gave a phone to Driver, telling him to "[s]hut up" and stated that Driver's attorney was on the phone. The officer observed that Driver's eyes were bloodshot and glassy, his breath smelled of intoxicants, and he swayed front to back. Driver slurred his words and stated, "Chris Yarb[]ro just texted me I'm not supposed to."

Driver refused to submit to any field sobriety tests or a preliminary breath-test. Based upon the officer's observations at the scene, he arrested Driver at 11:41 p.m. for driving while intoxicated ("DWI"). Driver then requested to speak to his attorney. The officer allowed the call and did not listen to the conversation. Driver then gave the officer a "thumbs up" signal when he had finished his conversation. Driver also told the officer that he had been able to contact his attorney. At 11:48 p.m., the officer read Implied Consent to Driver (which contains a reference to a twenty-minute period in which the driver may attempt to contact an attorney) (section 577.041.3), and at 11:49 p.m., Driver refused to provide a sample of his breath.

**Analysis**

*Point 1*

Driver's first point claims:

The [circuit] court erred in entering judgment upholding revocation, because the [circuit] court erroneously declared and applied the law, in

3

that, the uncontested evidence established [Driver] was not afforded twenty minutes to attempt contact with an attorney after receiving [Implied Consent] in violation of [section] 577.041, rendering the claimed refusal uninformed and non-consensual.

We disagree.

> A person whose license has been revoked for refusal to submit to a chemical test may petition for review by a circuit court in the county in which the arrest occurred. Section 577.041.4. At the hearing, the court shall determine only: (1) whether or not the person was arrested; (2) whether or not the officer had reasonable grounds to believe the person was [DWI]; and (3) whether or not the person refused to submit to the test. *Id.* "The Director has the burden of establishing each element by a preponderance of the evidence." *Foster* [*v. Dir. of Revenue*]*,* 186 S.W.3d [928,] [] 930–31 [(Mo. App. S.D. 2006)].

*White*, 255 S.W.3d at 577.

Here, Driver challenges only whether he was aware of the consequences of refusing to submit to the test when he talked with his attorney. A "refusal" occurs when a person of his own volition declines to take the breath test. *Id.* at 578. "A qualified or conditional consent or refusal is considered a refusal, except where the consent or refusal is conditioned on having an opportunity to speak with an attorney." *Id.*

Driver argues that his refusal was uninformed and non-consensual because he was not afforded twenty minutes in which to contact his attorney *after* Implied Consent was read to him. On this issue, the circuit court found that Driver had contacted an attorney, refused to submit to the test, and "unequivocally abandoned further attempts to contact an [attorney]." We agree.

> Although there is no constitutional right to speak with an attorney prior to deciding whether to submit to a breath test, []*Foster,* 959 S.W.2d [at] 146 [], section 577.041.1 does provide a limited statutory right to confer with an attorney prior to making that decision:
>
>> If a person when requested to submit to any test allowed pursuant to section 577.020 requests to speak to an

4

> attorney, the person shall be granted twenty minutes in
> which to attempt to contact an attorney. If upon the
> completion of the twenty-minute period the person
> continues to refuse to submit to any test, it shall be deemed
> a refusal.

*White*, 255 S.W.3d at 578 (quoting what is now section 577.041.3).[3]

In support of his argument that he should have been given twenty minutes in which to again contact his attorney after the officer read Implied Consent, Driver cites the cases of *Weil v. Dir. of Revenue*, 304 S.W.3d 768, 770 (Mo. App. E.D. 2010), and *Schussler v. Fischer*, 196 S.W.3d 648, 651 (Mo. App. W.D. 2006). While both of those cases reversed DOR's revocation of the drivers' driving privileges based upon the officers' failures to allow the drivers twenty minutes to contact an attorney *after* being read Implied Consent, in neither of those cases did the driver actually speak with an attorney, which materially distinguishes them from what occurred in this case. *See Weil*, 304 S.W.3d at 770, and *Schussler*, 196 S.W.3d at 649-50.

Driver also relies on *White*, but *White* merely commented in dicta that the twenty-minute time period does not begin running until after the officer informs the person of the required information under Implied Consent. 255 S.W.3d at 578. The issue here is whether, having already consulted with his attorney about his being arrested for DWI, did Driver abandon any further attempts to speak with his attorney after the officer read Implied Consent to Driver.

> Where a driver is given an opportunity to contact an attorney after
> requesting to speak with one, [section] 577.041.[3] is satisfied if "the
> twenty[-]minute statutory period expires *or the driver abandons the
> attempt*." *McMaster v. Lohman,* 941 S.W.2d 813, 817 (Mo.App.
> W.D.1997) (emphasis added). "Abandonment occurs where the person
> made all the attempts he or she wants to make and reaches a decision to
> refuse to submit to the test before the twenty minutes has elapsed." *Snider*

---

[3] Section 577.041.3 was previously contained in section 577.041.1.

*v. Dir. of Revenue,* 314 S.W.3d 841, 844 (Mo.App. S.D.2010) (quoting *Bacandreas* [*v. Dir. of Revenue, State of Mo.*]*,* 99 S.W.3d [] [497,] 500 [(Mo. App. E.D. 2003)].  Abandonment is established when "the driver ceases attempting to contact a lawyer and indicates that he intends to make no additional attempts to contact an attorney within the twenty[-]minute period." *McMaster,* 941 S.W.2d at 817 (citing *Wall v. Holman,* 902 S.W.2d 329, 331 (Mo.App. W.D.1995)).

**Green v. Dir. of Revenue**, 386 S.W.3d 858, 861 (Mo. App. W.D. 2012).

Our cases have concluded that drivers are deemed to have abandoned their efforts to contact an attorney if they refuse to submit to a chemical breath test after having been given access to a phone, made a phone call, and spoke with the person they called.  *Id.* at 863 (citing **Hunter v. Dir. of Revenue**, 75 S.W.3d 299, 304 (Mo. App. E.D. 2002), and (**Schmidt v. Dir. of Revenue**, 48 S.W.3d 688, 691-92 (Mo. App. W.D. 2001)).

Here, the AIR established that, after speaking with his attorney, Driver gave the officer a "thumbs up" gesture and told the officer that he had been able to speak with his attorney.  A few minutes later, the officer read Implied Consent, and Driver almost immediately refused to give the officer a sample of his breath.  Based upon the case law noted above, the circuit court could (and did) find that Driver had abandoned any further attempts to talk to an attorney.

Point one is denied.

*Point 2*

Driver's second point claims:

The [circuit] court erred in entering judgment upholding revocation, because the judgment is not supported by substantial evidence, in that, there was no evidence that tended to prove the lack of actual prejudice caused by the violation of [section] 577.041.

Having found no violation of section 577.041.3 in this case, we need not determine whether Driver was prejudiced, which becomes relevant only if the

6

requirements of section 577.041.3 are *not* met. *See **Keim v. Dir. of Revenue***, 86 S.W.3d 177, 180-81 (Mo. App. E.D. 2002) (citing ***Hunter***, 75 S.W.3d at 304, for the proposition that "[t]he fact that the requirements of section 577.041.[3] are not satisfied does not, however, automatically warrant relief to the driver, but instead requires that the driver be actually prejudiced as a result of the officer's noncompliance with the statutory requirements").

Even if we did reach the question of prejudice, similar cases have concluded that no prejudice occurs when the driver – as here – spoke to an attorney and later refused to submit to a breath-test. *See **Hunter***, 75 S.W.3d at 304.

Point 2 also fails, and the judgment of the circuit court is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS