Nicholas B. REED, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. SC 87082.

Supreme Court of Missouri,
En Banc.

Feb. 14, 2006.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Special Asst. Atty. Gen., Jefferson City, for Appellant.

Larry A. Reed, St. Louis, for Respondent.

RICHARD B. TEITELMAN, Judge.

Nicholas Reed was arrested on suspicion of driving while intoxicated over three hours after he backed his truck into a ditch and walked home. Section 577.039 prohibits arrests without a warrant in driving while intoxicated cases if the arrest without a warrant is made more than one and one half hours after the claimed violation. However, an arrest without a warrant is permitted if the person to be arrested "left the scene of an accident or was removed from the scene to receive medical treatment." There was no accident within the meaning of section 577.039, RSMo

1. Unless otherwise noted, all statutory citations are to RSMo 2000.

2000[1]. The arrest without a warrant was, therefore, in violation of section 577.039, and the chemical analysis of Reed's blood alcohol content was inadmissible. The circuit court's judgment reinstating Reed's driving privileges is affirmed.[2]

*FACTS*

At approximately 3:00 a.m. on December 20, 2003, Nicholas Reed backed his truck into a ditch along a street in Rolla, Missouri. Approximately three hours later, Sergeant Mark Reynolds of the Missouri Highway Patrol observed a pickup truck "backed off into a ditch with the emergency flasher activated." The front half of the truck was blocking a lane of traffic. The truck was unoccupied and appeared to have been there for some time, as the engine was cold and frost had accumulated. The truck was not damaged. There was no damage to adjacent property.

Sgt. Reynolds contacted a tow service to have the truck removed from the ditch. The tow service told Sgt. Reynolds that the truck owner had just called and requested that the truck be towed to his residence. At Sgt. Reynold's request, the Rolla police department sent an officer to the owner's residence to pick up the vehicle owner and return him to the scene.

At 6:30 a.m., the Rolla police officer returned to the truck with Reed. Reed told Sgt. Reynolds that he had missed a turn onto a street and that he backed into the ditch while turning back around. While Reed was speaking, Sgt. Reynolds noticed an odor of intoxicants and observed that Reed's eyes were bloodshot and that his speech was slurred. Reed admitted that he had consumed four or five beers between 11:00 p.m. and 1:00 a.m. but denied

2. After opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

that he had consumed any alcohol since backing his truck into the ditch. Sgt. Reynolds administered field sobriety tests, and, at 6:46 a.m., arrested Reed. Sgt. Reynolds also issued Reed a citation for careless and imprudent driving.

Reed was transported to the Phelps County Sheriff's Department and advised of his *Miranda* rights and his rights under Missouri's implied consent law. Reed consented to a breath test. The test results indicated that Reed's blood alcohol content was 0.136%. Sgt. Reynolds served Reed with a notice that his driving privileges were suspended and a citation for careless and imprudent driving in violation of section 304.012.

The director administratively suspended Reed's driving privileges. Reed filed a petition for a trial de novo. The director answered, stating that "[Reed] was arrested upon probable cause on or about December 20, 2003, in Phelps County, Missouri, and that [Reed] was operating a *motor vehicle in the State of Missouri with* a blood alcohol content exceeding the limits in section 302.500–302.540 RSMo...." Reed filed a motion for judgment on the pleadings and, alternatively, for summary judgment. Reed argued that his driving privileges should be reinstated because his arrest was illegal under section 577.039 in that he was arrested without a warrant more than one and one-half hours after the claimed violation occurred. In response, the director argued that section 577.039 was inapplicable because Reed left the scene of an "accident", and, in any event, that the exclusionary rule does not apply in a civil proceeding to suspend or revoke driving privileges. The circuit court reinstated Reed's driving privileges because the arrest "was not valid under Missouri statutes." The director appeals.

## STANDARD OF REVIEW

The circuit court's judgment purports to sustain Reed's motion for judgment on the pleadings. However, Reed attached to his motion a copy of the ticket he received for careless and imprudent driving. The ticket was not a part of the pleadings. The court also allowed the director to present additional facts for the court to consider in ruling on the motion. Rule 55.27(b) states that if matters outside the pleadings are presented to and not excluded by the circuit court, then motion for judgment on the pleadings must be treated as one for summary judgment. Consequently, the judgment is reviewed de novo and the issue is whether Reed was entitled to judgment as a matter of law. *ITT Commercial Finance v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 380 (Mo. banc 1993).

## ANALYSIS

The director argues that: (1) the circuit court erred in setting aside the suspension because Reed was lawfully arrested under Section 577.039; (2) it is irrelevant whether Reed was lawfully arrested pursuant to section 577.039; and, (3) that the blood alcohol test results were lawfully obtained regardless of whether Reed had been lawfully arrested for DWI.

Reed was not lawfully arrested under section 577.039. In relevant part, section 577.039 provides that an arrest without a warrant for driving while intoxicated or driving with an excessive blood alcohol content is lawful when "made within one and one-half hours after such claimed violation occurred, unless the person to be arrested has left the scene of an accident or has been removed from the scene to receive medical treatment."

It is undisputed that Reed walked home after backing his truck into the ditch and was not removed from the scene to

receive medical treatment. Reed was then arrested without a warrant more than one and one-half hours after he allegedly drove while intoxicated. The arrest of Reed without a warrant was thus illegal unless Reed "left the scene of an accident" when he walked home after backing his truck into the ditch.

The term "accident" is not defined in section 577.039. The director argues that an "accident" includes any unintentional mishap involving a motor vehicle even if there is no personal injury or property damage. The director's argument is foreclosed by other statutes and the published opinion of the Department of Revenue.

██ Statutes relating to the same subject matter should be construed consistently with one another. *Romans v. Director of Revenue*, 783 S.W.2d 894, 896 (Mo. banc 1990). Section 577.039 and section 577.060 both deal with motor vehicle accidents. Section 577.060 provides that a person "commits the crime of leaving the scene of a motor vehicle accident" if he or she, "knowing that an injury has been caused to a person or damage has been caused to property, . . . leaves the place of the injury, damage or accident" without giving specified information to police or the injured party. Section 577.060, which is included in the same chapter as section 577.039, unambiguously provides that the crime of leaving the scene of an accident requires a showing of either personal injury or property damage. The director's argument that an "accident" under section 577.039 does not require personal injury or property damage creates a needless inconsistency with section 577.060. In order for section 577.039 to be consistent with section 577.060, the term "accident" in section 577.039 also requires either property damage or personal injury.

This conclusion is further supported by the Department of Revenue's published position in the Missouri Driver's Guide regarding when an "accident" has occurred. The September 2004 edition of the Driver's Guide states that "[a]n accident is when you injure yourself or someone else, or cause damage to property, while driving your vehicle." Under the Department's own interpretation of the term, Reed was not involved in an accident because he caused no personal injury or property damage when he backed his car into the ditch. Reed was not involved in an accident as that term is used in the relevant statutes. Contrary to the director's argument, Reed was arrested in violation of section 577.039 because he was arrested without a warrant more than one and one half hours after the violation and he did not leave the scene of an "accident" within the meaning of the statute.

██ Given that the arrest was in violation of section 577.039, the next issue is whether the test results are admissible. The legislature has determined that anyone who operates a motor vehicle on public roads in this state impliedly consents to taking a chemical test to determine whether he or she is driving intoxicated. The implied consent law was adopted in part "to establish a fixed standard for procuring admissible evidence of blood alcohol for use against persons operating automobiles while intoxicated." *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 619 (Mo. banc 2002). "The statutes and corresponding regulations establish the foundation which justifies the admission of a chemical analysis for blood alcohol independent of common law rules of evidence." *Sellenriek v. Director of Revenue*, 826 S.W.2d 338, 340 (Mo. banc 1992).

██ Section 577.037, RSMo Supp.2003, governs the admissibility of chemical tests to establish a driver's blood alcohol content in license suspension and revocation pro-

ceedings. Section 577.037.1 provides that a chemical analysis of a person's blood alcohol content is admissible and that a blood alcohol content of 0.08% is prima facie evidence of intoxication. Section 577.037.4 limits the admissibility test results by providing that "in order to give rise to the presumption or to have the effect provided in subsection 1," a chemical analysis "shall have been performed as provided in sections 577.020 to 577.041...." The reference to the "effect provided in subsection 1" is to the provision in section 577.037.1 that chemical analysis of a person's blood alcohol content is admissible. Therefore, admissibility is conditioned upon the requirement that the tests "shall" be performed in compliance with section 577.020 to 577.041. A failure to comply with the provisions of sections 577.020 to 577.041 means that the chemical analysis is not admissible in civil proceedings to suspend or revoke a driver's license. Section 577.039 is among the provisions regulating the performance of a chemical analysis of a person's blood alcohol content. As determined above, Reed was arrested in violation of section 577.039. Accordingly, the blood alcohol test results obtained from the arrest in violation of section 577.039 are not admissible[3].

The director's final argument, one not advanced in the circuit court, is that even if Reed was arrested in violation of section 577.039, the test results are admissible because Reed was also arrested for careless and imprudent driving. Section 577.039 applies only to arrests for driving while intoxicated or driving with excessive blood alcohol content. The director argues that the arrest was thus valid under section 577.020.1(1), which permits an arrest "for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition...." Although Reed was issued a citation for careless and imprudent driving, he was arrested for driving while intoxicated. Reed's arrest, as well as the admissibility of the blood alcohol test results, is governed by section 577.039. The circuit court correctly held that the blood alcohol results obtained from Reed were inadmissible.

The judgment is affirmed.

WOLFF, C.J., LAURA DENVIR STITH and WHITE, JJ., concur.

LIMBAUGH, J., dissents in separate opinion filed.

PRICE and RUSSELL, JJ., concur in opinion of LIMBAUGH, J.

STEPHEN N. LIMBAUGH, JR., Judge, dissenting.

I respectfully dissent.

Nicholas Reed had an *accident.* He ran his vehicle off the road and got it stuck in a ditch so that he had to walk home and call for a tow truck to pull it out. He did not intend for this to happen. The case is as simple as that.

The word "accident," of course, has a plain and ordinary meaning. It is not a legal term or a term of art, nor is it given a separate and special definition in section 577.039, the statute in question. Instead, the plain meaning of the word is to be found in the dictionary. *Cox v. Director of Revenue,* 98 S.W.3d 548, 550 (Mo. banc 2003). An accident, then, is:

---

**3.** This conclusion does not rest on the exclusionary rule, which is applicable only in criminal cases. The test results are inadmissible only because the results were procured in violation of the statutes that control the admissibility of evidence.

1a: an event or condition occurring by chance or arising from unknown or remote causes ... [or] b: lack of intention or necessity: CHANCE—often opposed to *design* ... [or] c: an unforeseen unplanned event or condition ... [or, most pertinently] 2a: a usu. sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result.... WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 11 (1986).

Obviously, Reed's misconduct falls within all of these overlapping definitions, so much so that one wonders how the Court perceives otherwise. Indeed, just last term, in *State v. Madorie*, 156 S.W.3d 351 (Mo. banc 2005), a DWI case, this Court reviewed nearly identical circumstances in which a driver "got stuck in the ditch" after "trying to turn around" and repeatedly referred to the incident as an "accident." And further, for what it's worth (and in blatant contravention of the representations in Reed's brief!), the alcohol influence report filed by the arresting officer makes at least three independent references to an "accident" having occurred.

If a word in a statute has a plain and ordinary meaning, and if there is no specific statutory definition to the contrary, the plain and ordinary meaning controls, and there is no need to apply rules of statutory construction. *Vance Bros., Inc. v. Obermiller Const. Services, Inc.*, 181 S.W.3d 562 (Mo. banc 2006). That is the case here. The words in the statutes are not ambiguous, so there is no need for statutory construction.

Nonetheless, the majority relies on the rule that "statutes relating to the same subject matter should be construed consistently with one another," to superimpose the elements of the crime of leaving the scene of an accident from section 577.060 on to a different statute using similar terms, section 577.039. These elements, however, which "require a showing of either personal injury or property damage," are specific to section 577.060 and do not purport to extend to any other statute. Furthermore, the fact that the two statutes use similar terms does not necessarily mean that "they are statutes relating to the same subject matter." In my view, the two statutes relate to different subjects: section 577.060 imposes substantive criminal liability on the act of leaving the scene of an accident; in contrast, section 577.039 sets out the procedural rules pertaining to warrantless arrests in DWI cases. In short, I see nothing in section 577.060 to suggest that leaving the scene of an accident in which there was no personal injury or property damage is no less leaving the scene of an accident. One can still leave the scene of an accident without incurring criminal liability. Unfortunately, the majority rewrites the statutes so that leaving the scene of an accident under section 577.039 can only be accomplished by the commission of the crime of leaving the scene of an accident under section 577.060.

The majority also points to the definition of "accident" in the Missouri drivers' guide for the proposition that the Department of Revenue, itself, construes the word "accident" so that it is limited to events involving personal injury or property damage. However, the definition of "accident" in the drivers' guide mirrors the definitional language in section 577.060, and it is stated with the clear purpose to explain that it can be a crime to leave the scene of an accident. Nothing is said about accidents in the context of warrantless arrests in DWI cases.

For these reasons, I would hold that an accident occurred, that Reed left the scene

of the accident, and that, as a result, his subsequent arrest was lawful.