Kris Allen SCHUSSLER, Respondent,

v.

Carol Russell FISCHER, Director
of Missouri Department of
Revenue, Appellant.

No. WD 65468.

Missouri Court of Appeals,
Western District.

June 27, 2006.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 1, 2006.

James Artelle Chenault III, Jefferson City, for appellant.

Jeffrey Leon Dull, Matthew D. Lowe, Clinton, for respondent.

RONALD R. HOLLIGER, Judge.

The Director of Revenue ("Director") appeals the judgment of the Circuit Court of Henry County, Missouri, setting aside the revocation of Kris Schussler's ("Driver") driver's license under section 577.041 [1] , for the police officer's failure to allow Driver twenty minutes to contact an attorney after being read the Implied Consent Law. We find that the officer violated the implied consent law by not allowing Schussler an additional twenty minutes to contact an attorney after the implied consent warning was given even though he had earlier requested an attorney and been

1. All statutory references are to Mo.Rev.Stat. (2000), unless otherwise noted.

unsuccessful in reaching one after he was given a *Miranda* warning. Because the Director has failed to satisfy its burden to show the violation was not actually prejudicial, we affirm.

## Points on Appeal

The Director raises two points of error in the trial court's order setting aside the revocation of Driver's license. In his first point, the Director claims that the trial court erred in setting aside the revocation of Driver's license, because the decision was against the weight of the evidence and the trial court erroneously applied the law, in that the uncontroverted evidence established that there were reasonable grounds to believe Driver was driving while intoxicated.

In his second point, the Director claims that the trial court erred in setting aside the revocation of Driver's license, because the trial court erroneously applied the law, in that Driver refused to submit to the breath test when given the implied consent warning and did not ask to speak to counsel after being read the Implied Consent Law, and Driver was not prejudiced by not being given an additional twenty minutes to attempt to contact counsel after being given the implied consent warning. Because Point II is dispositive of this case, we address it alone.

## Factual and Procedural Background

On October 28, 2004, at 11:46 P.M., Officer David Akers ("Officer") of the Clinton, Missouri, Police Department, arrested Driver for driving while intoxicated. Officer received a call at 11:15 P.M. concerning an intoxicated person at an Amoco gas station. When Officer arrived at the station, the caller pointed out Driver's vehicle as it was leaving the station. Officer caught up to the vehicle and initiated a traffic stop after observing Driver's vehicle weaving in its lane and traveling to the shoulder of the roadway. When he spoke to Driver, Officer smelled an odor of intoxicating beverage and noticed that Driver's eyes were bloodshot and glassy/watery. Officer also observed that Driver was "a little wobbly" when walking to the rear of the vehicle. Officer administered the horizontal gaze nystagmus test, which indicated that Driver was intoxicated. Driver refused to do the one-legged stand and walk-and-turn test because stitches had been removed from his leg at an earlier date.

Driver was transported to the Henry County Jail and was advised of his *Miranda* rights at 12:03 A.M. At this time, Driver requested to contact his attorney and Officer allowed Driver twenty minutes to attempt to contact his attorney. Driver was not able to contact his attorney, but was able to contact his girlfriend. At 12:44 A.M., Officer read Driver the Implied Consent Law from the Alcohol Influence Report and then asked Driver if he would take a breathalyzer test. Driver refused and his license was immediately revoked pursuant to section 577.041.

Pursuant to section 577.041.4, Driver filed a petition for a hearing to reinstate his license. The circuit court set aside the Director's revocation of Driver's license. This appeal followed.

## Standard of Review

■ Appellate review of an order setting aside the revocation of a driver's license is governed by the standard set forth in *Murphy v. Carron,* 536 S.W.2d 30, (Mo. banc 1976). *Kotar v. Dir. of Revenue,* 169 S.W.3d 921, 924 (Mo.App. W.D. 2005). The judgment of the trial court shall be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

## Discussion

In Missouri, a driver who operates a motor vehicle is deemed to have impliedly consented to a chemical test to determine the alcohol content of the driver's blood. Section 577.020.1. If a driver under arrest for driving while intoxicated refuses to submit to a chemical test, the Director of Revenue shall revoke the person's driver's license for a period of one year. Section 577.041.3. Prior to requesting a driver to submit to a chemical test, the officer must give the reasons for the request and inform the driver that evidence of a refusal to take the test may be used against the driver and the driver's license shall be immediately revoked upon refusal. Section 577.041.1.

If a driver requests to speak to an attorney, the driver is to be given twenty minutes to attempt to contact an attorney immediately after the officer informs the driver of the Implied Consent Law. Section 577.041.1; *McMaster v. Lohman Dir. of Revenue*, 941 S.W.2d 813, 817 (Mo.App. W.D.1997). The purpose of this statutory provision is to provide the driver with a reasonable opportunity to contact an attorney to make an informed decision as to whether to submit to a chemical test. *Kotar*, 169 S.W.3d at 925. After the twenty minutes has expired, a continued refusal to submit to the test is deemed a refusal. Section 577.041.1.

A driver whose license has been revoked for refusal to submit to a chemical test may petition for a hearing before a court in the county in which the arrest occurred. Section 577.041.4. At the hearing, the Director has the burden of establishing a prima facie case for revocation for refusal to submit to a chemical test. *Kotar*, 169 S.W.3d at 924. The Director must show: (1) the driver was arrested; (2) the officer had reasonable grounds to believe that the driver was driving while intoxicat-

ed; and (3) the driver refused to submit to a chemical test. *Id.* at 925–26 (citing Section 577.041.4; *Mount v. Dir. of Revenue*, 62 S.W.3d 597, 599 (Mo.App.2001)). The driver then has the burden of rebutting the Director's prima facie case for revocation. *Id.*

Section 577.041.1 is violated if an officer fails to allow a driver, upon request, twenty minutes to attempt to contact an attorney after being read the Implied Consent Law. *Id.* at 926. However, to be entitled to relief, the driver must be actually prejudiced by the officer's failure to comply with the statute. *Id.* The burden is on the Director to show that the driver was not actually prejudiced by the officer's failure to comply with section 577.041.1. *Id.*

Whether Driver's request to speak to an attorney before being read the Implied Consent Law was sufficient to invoke the twenty minute provision of section 577.041.1 must be addressed before we can determine whether Driver suffered actual prejudice in not being given twenty minutes to contact an attorney after the Implied Consent Law was read.

The Director argues that in failing to request to contact an attorney *after* being read the Implied Consent law, Driver never actually invoked the twenty-minute rule. The Director argues that the language of section 577.041.1 allows a driver twenty minutes to contact an attorney only if the driver requests to speak to an attorney *after* being asked to submit to a chemical test. It is a well-recognized principle that if the language of the statute is clear, the court must give effect to the language as written. *Harper v. Dir. of Revenue*, 118 S.W.3d 195, 199 (Mo.App. W.D.2003)(citing *Knob Noster Educ. v. Knob Noster R–VIII Sch. Dist.*, 101 S.W.3d 356, 361 (Mo.App. W.D.2003)). However, when the language of a statute is

ambiguous or if its plain and ordinary meaning would lead to an absurd or illogical result in light of the statute's purpose, the court will look past the plain and ordinary meaning of the statute. *Id.*

A driver who requests to speak to an attorney after being given a *Miranda* warning but before being read the Implied Consent Law may not be aware that he or she needs to, or has the right to, make an additional request to speak to an attorney again after being read the Implied Consent Law. Most drivers are probably not aware of section 577.041.1's twenty minute provision and the statute does not require officers to inform drivers that if they request an attorney after being read the Implied Consent Law they will be given twenty minutes to attempt to contact an attorney. As stated in *Brown v. Dir. of Rev.*, "the average citizen would likely be more aware of the *Miranda* rights ... [and] may view his rights and the consequences of exercising those rights under section 577.041 in the same manner that the exercise of those rights would be applied under *Miranda*." 34 S.W.3d 166, 172 (Mo.App. W.D.2000).

■ Due to this confusion and lack of awareness, this court has stated that whether the request to speak to an attorney comes *before or after* the Implied Consent Law is read, section 577.041.1's twenty minute waiting period begins running immediately after the officer has informed the driver of the Implied Consent Law. *Brown*, 34 S.W.3d at 174; *McMaster*, 941 S.W.2d at 817. This is consistent with the legislature's purpose. To hold otherwise would place an undue burden on the driver and defeat the purpose of the statute. In this case, the Driver's request to speak to an attorney after *Miranda*, but before being read the Implied Consent Law, was sufficient to invoke the twenty-minute rule.

The Director relies on *Brown v. Director of Revenue*, 34 S.W.3d 166 (Mo.App. W.D.2000)(reversing revocation of driver's license), and *Glastetter v. Dir. of Revenue*, 37 S.W.3d 405 (Mo.App. E.D.2001) (affirming trial court's decision setting aside revocation of driver's license), in support of her position that Driver did not suffer actual prejudice by being given twenty minutes to contact an attorney prior to rather than after being read the Implied Consent Law. The Director's reliance on these cases is misplaced, as the particular facts of those cases are not relevant in determining whether the Driver in this case suffered actual prejudice.

In *Brown*, the driver was given twenty minutes to attempt to contact an attorney before the officer read the Implied Consent Law. 34 S.W.3d at 168. After being read the Implied Consent Law, Mr. Brown again indicated that he wanted to speak to his attorney. *Id.* The officer deemed his request to speak to a lawyer as a refusal and did not allow Mr. Brown to take the test when Mr. Brown offered to do so ten minutes after being read the Implied Consent Law. This court found that Mr. Brown suffered actual prejudice by not being given twenty minutes to contact an attorney after being read the Implied Consent Law. *Id.* at 175.

In *Glastetter*, the driver was given twenty minutes to contact an attorney after the *Miranda* warning but prior to being read the Implied Consent Law. 37 S.W.3d at 406. On the advice of his attorney, Mr. Glastetter offered to take the test eighteen minutes after the Implied Consent Law was read. *Id.* at 406–07. The officer refused to allow Mr. Glastetter to take the breath test and Glastetter's license was revoked. *Id.* at 407. On appeal, the Missouri Court of Appeals for the Eastern District affirmed the trial court's finding that Glastetter suffered actual prejudice

because his request to take the breath test within twenty minutes of the Implied Consent warning was refused. *Id.* at 408.

In this case, unlike *Brown* or *Glastetter*, Driver did not condition his refusal to take the test upon speaking to an attorney or request to speak to an attorney after being read the Implied Consent law, nor did Driver request to take a breath test within twenty minutes of being read the Implied Consent law. Here, Driver expressly refused to submit to a breath test after being read the Implied Consent law. Although the Director is correct in pointing out these factual distinctions, the Director is incorrect in her assertion that the lack of a renewed request for an attorney indicates that Driver was not prejudiced by Officer's failure to give Driver another twenty minutes to contact counsel.

This court must view all the evidence to determine whether an individual has suffered actual prejudice by not being given twenty minutes to contact an attorney after being read the Implied Consent law. *Brown*, 34 S.W.3d at 174. The court may consider the sequence of the warnings and events or the effect of an officer providing time after the *Miranda* warning but before reading the Implied Consent law. *Id.* Here, we consider the effect of the Officer's providing the twenty minutes after the *Miranda* warning but before reading the Implied Consent Law.

As stated above, the purpose of the twenty-minute period is to provide the driver with a reasonable opportunity to contact an attorney to make an informed decision as to whether to submit to a chemical test. *Kotar*, 169 S.W.3d at 925. Where, as here, the driver requests to speak to an attorney and is given twenty minutes to attempt to contact an attorney after *Miranda* but before being read the Implied Consent law, the driver, at the time of the request for an attorney, has not been informed of the consequences of refusing to submit to a chemical test. This lack of information makes it difficult, if not impossible, for the driver to make an informed decision. It is for this reason that this court held in *McMaster* that section 577.041.1's twenty minute waiting period begins running immediately after the officer has informed the driver of the Implied Consent Law. *McMaster*, 941 S.W.2d at 817.

In this case, the trial court expressly found that the failure of Officer to allow Driver an additional twenty minutes to contact an attorney after Officer read the Implied Consent Law violated section 577.041.1 and was prejudicial to Driver. It is crucial that the Director has the burden of showing that Schulsser was not prejudiced by the violation of the implied consent law. *Kotar*, 169 S.W.3d at 926. The Eastern District of this court has also held that it is the Director's burden to show the absence of prejudice. *Keim v. Dir. of Revenue*, 86 S.W.3d 177, 182 (Mo.App. E.D.2002); see also *Bacandreas v. Dir. of Revenue*, 99 S.W.3d 497, 501 (Mo.App. E.D.2003). These cases all give some guidance to the Director as to how he may satisfy this burden. We will not assume that the driver, who has requested an attorney after a *Miranda* warning but before the implied consent warning, knows and understands that he can get additional time after the implied consent warning but only if he asks for it. In fact, the average driver would assume that the time he was given after *Miranda* was the only time to which he was entitled. The record contains no evidence from which the trial court could have concluded that Schulsser was no longer interested in reaching his attorney or had abandoned those efforts or could have additional time to attempt the contact. The record does not indicate that the Director presented any such or similar

evidence that Driver did not suffer actual prejudice. Because the Director failed to show that Driver was not actually prejudiced, the finding of the trial court that Driver was prejudiced by Officer's failure to allow Driver twenty minutes to contact an attorney after being read the Implied Consent Law is affirmed.

## Conclusion

The trial court correctly interpreted and applied the law. The judgment of the trial court is affirmed.

PATRICIA A. BRECKENRIDGE, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.