Sonja D. WILLIAMS, Petitioner–Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

No. SD 28910.

Missouri Court of Appeals, Southern District, En Banc.

Feb. 6, 2009.

2. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Richard D. Bender, Springfield, MO, for Appellant.

Monty C. Platz, Jefferson City, MO, for Respondent.

DON E. BURRELL, Presiding Judge.

This case requires us to determine whether a driver's request to speak to an attorney after she has been *Mirandized*[1] but before she has been asked to submit to

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Unless otherwise indicated, all references to statutes are to RSMo 2000.

3. *See* Section 577.010.

any blood alcohol or drug content testing pursuant to section 577.020[2] ("a chemical test") is sufficient to invoke the twenty-minute time period to attempt to contact an attorney granted by section 577.041.1 ("the twenty-minute rule"). The other two districts of our Court have addressed this question and reached differing conclusions. We join our colleagues in the Eastern District in finding section 577.041.1 to be clear and unambiguous; hold that its requirements were satisfied in this case; and affirm the judgment.

## I. Facts and Procedural Background

Deputy Kevin Elrod ("Deputy Elrod") was traveling eastbound on historic Route 66 when he observed a vehicle being driven by Sonja Williams ("Appellant") pull out in front of him, cross onto the shoulder of the roadway, move back across both the outside and inside lanes of traffic, then begin traveling midway between the two lanes. Deputy Elrod activated his lights and sirens, and Appellant eventually pulled over. Deputy Elrod approached Appellant's vehicle and smelled a moderate odor of alcohol coming from her breath. Deputy Elrod administered a field sobriety test, which Appellant failed. Deputy Elrod arrested Appellant for driving while intoxicated,[3] took her to the police station, and read her the *Miranda* warnings at "about 1:30 in the morning." Appellant immediately said she wanted to contact her lawyer. Deputy Elrod told Appellant that she had twenty minutes to contact one and provided her with access to a telephone and telephone book.[4] Appellant made one

4. We presume from his reference to a twenty-minute time period that Deputy Elrod believed Appellant's request to speak to an attorney after being advised of her *Miranda* rights, but prior to a recitation of her rights under the Implied Consent Law, was sufficient to invoke the twenty-minute rule.

unsuccessful attempt to reach her lawyer then returned to her original seat and made no additional attempts. About five minutes later, Deputy Elrod told Appellant that she had approximately ten to fifteen minutes left to contact her lawyer. Appellant responded by saying "well[,] I ain't going to talk to him."

At that point, Deputy Elrod recited the time as being 1:45 a.m., read Appellant "the Implied Consent" from the alcohol influence report ("AIR"),[5] and asked Appellant to submit to a breathalyzer test. Appellant did not make any additional request that she be allowed to speak to an attorney and immediately refused to submit to the breathalyzer test.

After Appellant's driver's license was administratively revoked for her refusal to take the breathalyzer test, Appellant filed her petition in the circuit court for judicial review of that revocation. The trial court upheld the Director of Revenue's ruling and this appeal followed.

## II. Standard of Review

Our review of an order sustaining the Director of Revenue's revocation of a driver's license is governed by the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Kotar v. Dir. of Revenue*, 169 S.W.3d 921, 924 (Mo.App. W.D. 2005). We must affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 924.

## III. Discussion

■ Appellant's sole point on appeal claims the trial court erred in sustaining

the Director of Revenue's suspension of her driver's license because the arresting officer failed to allow her twenty minutes to contact an attorney after he read the Implied Consent Law to her. As earlier noted, the other two districts of our Court have each addressed this issue and have reached different conclusions. *See Schussler v. Fischer*, 196 S.W.3d 648, 652 (Mo. App. W.D.2006) (holding that "whether the request to speak to an attorney comes *before or after* the Implied Consent Law is read, section 577.041.1's twenty minute waiting period begins running immediately after the officer has informed the driver of the Implied Consent Law"); *contra Paxton v. Dir. of Revenue*, 258 S.W.3d 68, 72 (Mo.App. E.D.2008) (refusing to follow *Schussler* and holding that section 577.041.1 clearly and unambiguously states that the twenty-minute waiting period for purposes of contacting an attorney is only triggered if the driver asks to speak to an attorney *after* he or she has been asked to submit to a chemical test).

■ Section 577.041 provides, in pertinent part, that "[i]f a person *when requested to submit to any test* allowed pursuant to section 577.020[[6]] requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney. If upon the completion of the twenty-minute period the person *continues to refuse to submit to any test*, it shall be deemed a refusal." Section 577.041.1 (emphasis added). Having fully considered the issue, we conclude, consistent with *Paxton*, that this provision of section 577.041.1 is clear and unambiguous in stating that the twenty-minute period to contact an attorney is implicated only

---

5. A pre-printed, standardized form promulgated by the Department of Revenue for use by law enforcement officers that contains the required language from the Implied Consent Law.

6. Commonly referred to as "the Implied Consent Law."

when the request to speak to an attorney is made in connection with the request to submit to a chemical test.[7]

Under the Implied Consent Law, a DWI arrestee is deemed to have consented to testing of his blood for alcohol or drug content. Section 577.020.1. A refusal to take the test results in an automatic, one-year license suspension. Section 577.041.3. The officer's request must state the reasons for asking the driver to take the test and inform the driver that if he refuses, his license will be immediately revoked and evidence of his refusal may be used against him. Section 577.041.1. Although section 577.041.1 requires that a driver be given twenty minutes to contact an attorney if the driver requests to do so, this is a right granted by statute; it is not a constitutional requirement. In contrast to the right of a person arrested on a criminal charge to be affirmatively informed of his right to consult with an attorney as set forth in *Miranda*, police need not inform a driver of his right to seek legal counsel under section 577.041.1. *Paxton*, 258 S.W.3d at 71; *Schussler*, 196 S.W.3d at 652.

In *Schussler*, the Western District found "the [d]river's request to speak to an attorney after *Miranda*, but before being read the Implied Consent Law, was sufficient to invoke the twenty-minute rule." *Id.* at 652. In reaching this conclusion, the court relied on the rule of law that "when the language of a statute is ambiguous or if its plain and ordinary meaning would lead to an absurd or illogical result in light of the statute's purpose, the court will look past the plain and ordinary meaning of the statute." *Id.* at 651–52. The court did not

actually declare the statute ambiguous, but rather expressed concern that a driver "who requests to speak to an attorney after being given a *Miranda* warning but before being read the Implied Consent Law may not be aware that he or she needs to, or has the right to, make an additional request to speak to an attorney again after being read the Implied Consent Law." *Id.* at 652. Perceiving "this confusion and lack of awareness," the court reiterated its previously-held view "that whether the request to speak to an attorney comes *before or after* the Implied Consent Law is read, section 577.041.1's twenty minute waiting period begins running immediately after the officer has informed the driver of the Implied Consent Law." *Id.* "To hold otherwise would place an undue burden on the driver and defeat the purpose of the statute." *Id.* The purpose of which "is to provide the driver with a reasonable opportunity to contact an attorney to make an informed decision as to whether to submit to a chemical test." *Id.* at 653.

In *Paxton*, however, the Eastern District reached a different conclusion, finding *Schussler*'s "holding contrary to the express language of Section 577.041.1" and observing that:

> Where language of a statute is clear and unambiguous, there is no room for construction, and we must give effect to the language as written. *Hunt v. Director of Revenue*, 10 S.W.3d 144, 149 (Mo.App. E.D.1999); *Harper v. Director of Revenue*, 118 S.W.3d 195, 199 (Mo.App. W.D. 2003). Courts "are without authority to read into a statute legislative intent contrary to intent made evident by plain

7. Whether the request for an attorney must necessarily come *after* the reading of the Implied Consent Law (as stated in *Paxton*) or might be triggered by a request that actually precedes the reading of the Implied Consent

Law but clearly indicates that the legal counsel is being sought on the issue of whether or not to submit to a chemical test is a question we will leave for another day.

language." *Hinnah v. Director of Revenue,* 77 S.W.3d 616, 620 (Mo. banc 2002). Here, Section 577.041.1's language is clear and unambiguous: "If a person when requested to submit to any test . . . requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney." Thus, it is a driver's request to speak to an attorney *after* having been asked to submit to a test that triggers a driver's allowance of twenty minutes to reach an attorney.

*Id.* at 72.

As even *Schussler* seemingly conceded, section 577.041.1 itself is not ambiguous: "If a person when requested to submit to any test . . . requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney." A request to contact counsel "when requested to submit" to testing (or after such request, per *Paxton,* 258 S.W.3d at 72) invokes the twenty-minute rule.

■ Nonetheless, *Schussler* foresaw "confusion and lack of awareness" vis-à-vis *Miranda* rights, and deemed its remedy "consistent with the legislature's purpose." 196 S.W.3d at 651–52. Yet legislative intent for an unambiguous law "can only be derived from the words of the statute itself." *State v. Rowe,* 63 S.W.3d 647, 650 (Mo. banc 2002). In our view, the statutory language does not suggest legislative intent to treat a *Miranda* request in the field as also triggering a twenty-minute wait under section 577.041.1. In fact, we have rather consistently refused to commingle section 577.041 and *Miranda* concepts. *Miranda* warnings are not required in civil proceedings such as these, and a request for chemical testing does not involve the interrogation of an arrested person. A person trying to decide whether to submit to such testing has no constitutional right to counsel; no right to *Miranda* warnings; and no right to be told

that he can consult with an attorney. *See, e.g., Sweatt v. Dir. of Revenue,* 940 S.W.2d 540, 542–43 (Mo.App. S.D.1997).

■ "When the words are clear, there is nothing to construe beyond applying the plain meaning of the law." *Rowe,* 63 S.W.3d at 649; *see also Staggs v. Dir. of Revenue,* 223 S.W.3d 866, 870 (Mo.App. W.D.2007) (citing *Schussler* for this very proposition: "It is a well-recognized principle that if the language of the statute is clear, the court must give effect to the language *as written.*") (emphasis added). Further, we fail to see how requiring a driver to request an attorney when requested to submit to a chemical test defeats the purpose of providing "the driver with a reasonable opportunity to contact an attorney to make an informed decision as to whether to submit to a chemical test" because it is not until the Implied Consent Law is read that a driver is informed of the consequences of his decision. *Schussler,* 196 S.W.3d at 653. We find that statutory interpretation is unnecessary and section 577.041.1 was satisfied because Appellant did not request to speak to an attorney when requested to submit to a chemical test. The judgment of the trial court is affirmed.

LYNCH, C.J., SCOTT, P.J., PARRISH, BARNEY and BATES, JJ., Concur.

RAHMEYER, J., Concurs in result.

NANCY STEFFEN RAHMEYER, Judge, concurring.

I concur in the result. Appellant requested and was given twenty minutes to contact her attorney; she chose not to continue in any "attempt to contact an attorney." Deputy Elrod complied with the Implied Consent Law.